UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| THE BANK OF NEW YORK MELLON, as Trustee,<br><br>                                Plaintiff,<br><br>     v.<br><br>THE MEWS HOMEOWNERS ASSOCIATION, *et al.*,<br><br>                                Defendants. | Case No. 2:17-cv-00473-KJD-BNW<br><br>**<u>ORDER</u>** |

There are three motions pending before the Court. First is Defendant Saticoy Bay, LLC's motion to dismiss (#46). Plaintiff, Bank of New York Mellon, responded and simultaneously moved for partial summary judgment (##47/48). Saticoy Bay replied (#49) and opposed BNY Mellon's motion for partial summary judgment (#50). Defendant, Mews Homeowners Association, also moves for summary judgment (#61). BNY Mellon has responded (#63), and Mews replied (#65).

This is a dispute over who holds the superior interest in real property located at 1218 Coach Lane in Las Vegas, Nevada. BNY Mellon and Saticoy Bay each claim the superior interest—BNY Mellon by virtue of a lender's deed of trust and Saticoy Bay by virtue of nonjudicial foreclosure and sale. Mews and Homeowners Association Services facilitated the nonjudicial foreclosure and trustee's sale but do not claim any interest in the property. BNY Mellon argues that its deed of trust survived Mews' foreclosure because the bank tendered the superpriority lien before foreclosure. The Court agrees. BNY Mellon has shown that its predecessor in interest submitted valid tender before Mews' foreclosure and sale and that Mews foreclosed anyway. Therefore, BNY Mellon's deed of trust survived, and Saticoy Bay took its interest subject to BNY Mellon's.

## I. Background

The parties mostly agree on the facts. In 2006, former-homeowner and non-party Roosevelt McCullom purchased the Coach Lane property. Countrywide Home Loans financed the purchase and secured its interest by recording a deed of trust against the property. Deed of Trust, ECF No. 47 Ex. A. Countrywide eventually assigned the deed of trust to Deutsche Bank. Assignment of DOT, ECF No. 47 Ex. B. The Coach Lane property is part of the Mews Homeowners Association and is subject to the association's Covenants, Conditions, and Restrictions ("CC&Rs"). The CC&Rs required McCullom to pay monthly assessments for shared maintenance and general community upkeep.

Eventually, McCollum fell behind on his assessments, which prompted Mews to initiate foreclosure proceedings. In February of 2012, Mews' agent, Homeowner Association Services, recorded a Notice of Delinquent Assessment Lien against the Coach Lane property. ECF No. 47 Ex. C. The notice identified a delinquency of $1,242.00 and warned that the balance would continue to increase monthly if not cured. Id. Neither McCullom nor BNY Mellon payed the delinquency, so Homeowners Association Services recorded a Notice of Default and Election to Sell under the deed of trust. ECF No. 47 Ex. D. That notice identified a past-due balance of $1,523.94 plus additional costs and fees. Id.

After receiving the Notice of Default and Election to Sell, BNY Mellon's predecessor in interest, Bank of America, retained the law firm Miles, Bauer, Bergstrom & Winters (Miles Bauer) to ascertain and satisfy Mews' superpriority lien. On September 5, 2012, Miles Bauer sent Mews and Homeowners Association Services a letter requesting a ledger of the association's outstanding fees and assessments. ECF No. 47 Ex. G-1. The letter acknowledged that Mews' lien was "arguably senior to BANA's first deed of trust" and that the bank would pay that amount, "whatever it [was]." Id. Homeowners Association Services provided a ledger of fees on the Coach Lane property, which identified the association's monthly assessments as $32.00. HOA Ledger, ECF No. 47 Ex. G-2. From that ledger, Bank of America determined that nine months of assessments was $288.00. The bank then tendered a check for $909.67 to Homeowners Association Services to cover nine months of missed assessments as well as

reasonable collection costs. ECF No. 47 Ex. G-3. Homeowners Association Services rejected the check.

After returning Bank of America's check, Homeowners Association Services proceeded with its foreclosure. In February of 2014, the association recorded a Notice of Trustee's Sale. ECF No. 47 Ex. E. Eight months later, the association recorded a second Notice of Trustee's Sale. ECF No. 47 Ex. F. Homeowners Association Services sold the property to Saticoy Bay for $20,300 at a trustee's sale on October 30, 2014. Foreclosure Deed, ECF No. 47 Ex. I.

On February 14, 2017, BNY Mellon filed this case, seeking quiet title and a declaration that its deed of trust survived the association's foreclosure. It brought three causes of action split between defendants Mews Homeowners Association, Saticoy Bay, LLC, and Homeowners Association Services. BNY Mellon brought its first cause of action—quiet title and declaratory relief—against every defendant. Its second and third causes of action—breach of NRS § 116.3116 and wrongful foreclosure, respectively—the bank brought against Mews and Homeowner Association Services. The bank will only pursue those claims if the Court determines that the association's foreclosure extinguished its deed of trust. The bank's final cause of action is for injunctive relief against Saticoy Bay. See generally Am. Compl., ECF No. 24. Mews answered the complaint and asserted crossclaims for indemnity, contribution, apportionment, breach of contract, and declaratory relief against Homeowners Association Services. See Mews' Answer, ECF No. 31. Homeowners Association Services has not participated in the suit despite being properly served, and the Clerk of Court has entered default against it. ECF No. 29.

In June of 2017, the parties stipulated to stay the case pending the final outcome of Bourne Valley Court Tr. v. Wells Fargo Bank, N.A., 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, --- U.S. ---, 137 S.Ct. 2296 (2017). After the Supreme Court denied certiorari, this Court lifted the stay and allowed the parties to move to modify the discovery plan and scheduling order. If the parties elected not to modify the scheduling order, the Court set a forty-five-day deadline on dispositive motions. Order Lifting Stay 2–3, ECF No. 45. No party has moved to modify the scheduling order or discovery plan. Instead, Saticoy Bay moved to dismiss and BNY Mellon and

Mews each moved for summary judgment. The parties' motions are fully briefed, and the Court turns to their merits.

## II. Legal Standard

The purpose of summary judgment is to avoid unnecessary trials by disposing of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986); Nw. Motorcycle Ass'n v. U.S. Dept. of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). It is available only where the absence of material fact allows the Court to rule as a matter of law. Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 322. Rule 56 outlines a burden shifting approach to summary judgment. First, the moving party must demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to produce specific evidence of a genuine factual dispute for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine issue of fact exists where the evidence could allow "a reasonable jury [to] return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court views the evidence and draws all available inferences in the light most favorable to the nonmoving party. Kaiser Cement Corp. v. Fischbach & Moore, Inc., 793 F.2d 1100, 1103 (9th Cir. 1986). Yet, to survive summary judgment, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

Where parties have filed competing motions for summary judgment, the Court must review each motion on its own merits. Fair Housing Council of Riverside Cty., Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001). In reviewing each motion, the Court views the evidence and makes all available inference in favor non-moving party. See Kaiser Cement Corp., 793 F.2d at 1103. At bottom, a party does not prevail on summary judgment solely because the other party did not prevail. See Riverside Two, 249 F.3d at 1136.

## III. Analysis

### A. BNY Mellon's Partial Motion for Summary Judgment

BNY Mellon brought the following claims against Saticoy Bay: (1) quiet title and declaratory relief and (2) injunctive relief. As an initial matter the bank's cause of action for preliminary or permanent injunctive relief is not itself a cause of action. It is a remedy. See In re

Wal-Mart Wage and Hour Emp. Pract. Litig., 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007). Accordingly, the Court dismisses that "claim."

BNY Mellon argues that Miles Bauer's 2012 tender cured Mews' superpriority lien and protected the bank's deed of trust from the association's foreclosure. Alternatively, the bank argues that Mews' foreclosure is void because the association foreclosed under an unconstitutional version of NRS § 116.3116(2). Finally, BNY Mellon argues that if tender did not save its deed of trust and NRS § 116.3116(2) was constitutional, the sale must be set aside because the inadequate sales price of the property coupled with fraud, unfairness, and oppression in the foreclosure process rendered the foreclosure inequitable. Because BNY Mellon cured the lien before Mews could foreclose, Mews' foreclosure was void as to the bank's deed of trust, and Saticoy Bay took its interest the property subject to BNY Mellon's interest. Therefore, the Court need not reach BNY Mellon's constitutional or equitable arguments.

The Nevada Supreme Court has confirmed that a party's valid tender before foreclosure discharges an association's superpriority lien and voids the foreclosure as to the tendering party's deed of trust. Bank of America, N.A. v. SFR Invs. Pool 1, LLC, 427 P.3d 113, 121 (Nev. 2018) ("Diamond Spur"). Tender is "valid" if it is payment in full and unconditional, or with conditions that the tendering party has a right to request. Id. at 117–118. Diamond Spur presented facts nearly identical to these. There, Bank of America calculated nine months of assessments and tendered a check for that amount before foreclosure. The bank's letter to the association accompanying its tender included certain conditions, including a "paid-in-full" condition, whereby the association's acceptance of tender would satisfy all of the bank's financial obligations to the association. Id. at 118. Like here, the association rejected the check and foreclosed. The association argued that the bank's tender was incomplete because it did not include payment for nuisance and abatement fees and that the tender was impermissibly conditional due to the paid-in-full language in the tender letter. Id. at 117–18.

The Nevada Supreme Court disagreed. It found that the bank's tender was both "in-full" and not impermissibly conditional. Payment in full, according to NRS § 116.3115, includes nine months of unpaid assessments and nuisance and abatement fees, if such fees exist. Id. at 117.

Because there was no evidence that Bank of America owed nuisance and abatement fees, its tender of nine months' unpaid assessments constituted payment in full. Id. Likewise the tender was not impermissibly conditional because Bank of America had a right to insist upon the conditions it included in its tender. By tendering payment prior to the foreclosure, the bank voided the association's foreclosure as to the superpriority lien. The association, therefore, could not convey the property free from Bank of America's deed of trust, and any subsequent purchaser took its interest subject to the bank's. Id. at 121.

The facts here are nearly identical to Diamond Spur, and the result is the same. Miles Bauer tendered the entire superpriority balance two years before Mews' foreclosure. As Diamond Spur made clear, the superpriority portion only includes up to nine months assessments plus nuisance or abatement charges. There is no evidence that BNY Mellon owed nuisance or abatement fees here, so its failure to tender nuisance and abatement fees does not make its tender incomplete. If anything, BNY Mellon overpaid because it included certain collection costs that it deemed reasonable on top of nine months of assessments. The statute did not require the bank to pay those costs to preserve its deed of trust. Overpayment aside, BNY Mellon's tender preserved its deed of trust. Mews could not convey the property free of the bank's deed of trust. Therefore, Saticoy Bay took its interest subject to BNY Mellon's.

Saticoy Bay argues that BNY Mellon's tender did not preserve its deed of trust for several reasons, none of which are persuasive in light of Diamond Spur. First, Saticoy Bay contends that summary judgment is inappropriate at this stage because it has not conducted enough discovery to determine whether Homeowners Association Services rejected the bank's tender in good faith. Under Rule 56(d), the Court may allow additional time for discovery or it may defer considering a motion for summary judgment if a nonmoving party cannot present facts to support its opposition. Fed. R. Civ. P. 56(d). Here however, the Court need not delay the inevitable. This record is clear that Miles Bauer calculated and tendered the superpriority lien amount before foreclosure. At that point, the bank cured the association's lien and was required to do nothing more. Additionally, Miles Bauer and Homeowners Association Services exchanged correspondence related to the ledger and outstanding balances. Had Homeowners

Association Services rejected the tender in good faith, it could have communicated its reasoning to Miles Bauer before foreclosing. It did not. Instead, Homeowners Association Services returned the check without explanation. Additional discovery will not change the fact that the bank cured Mews' superpriority lien.

Saticoy Bay also argues that Miles Bauer's tender did not discharge Mews' lien because (1) the tender assigned an interest in BNY Mellon, which subordinated the bank's interest to the association's and required recording; (2) the tender was impermissibly conditional; and (3) the association's rejection was in good faith. The Nevada Supreme Court has explicitly rejected Saticoy Bay's first two arguments, and there is no evidence supporting the third.

Tender of a superpriority lien does not operate as an assignment, nor does it subrogate the rights of the tendering party to the rights of the association. Diamond Spur, 427 P.3d at 119 citing NRS § 111.315. Tender of the superpriority lien "does not alienate, create, assign, or surrender an interest in land." Id. at 119. It *preserves* a pre-existing interest, which allows the holder of the deed of trust to protect its legitimate interest and avoid foreclosure. Id. at 119–20. Because tender is not an assignment of land, tender of the superpriority lien does not subrogate the bank's interest to the association's interest. Similarly, because tender does not "alienate, create, assign, or surrender" a property interest, the tendering party need not record its tender or keep it good. Id. To the contrary, "after tendering the superpriority portion of an HOA lien to preserve its interest as first deed of trust holder . . . a party need only be ready and willing to pay to keep the tender good." Id. at 121. It follows that § 116 does not require payment in cashier's check or other guaranteed funds. See id. at 120–21, Chinatown St. Tr. v. Bank of America, N.A., No. 74545-COA, 2018 WL 6609590 (Nev. Ct. App. Dec. 7, 2018). Here, Miles Bauer's tender was not an assignment of in interest in real property, and its failure to record the tender or pay by cashier's check did not invalidate the tender.

Likewise, the conditions included in Miles Bauer's letter did not invalidate its tender. A tendering party may only include conditions that it has a right to insist upon. Diamond Spur, 427 P.3d at 118. Acceptable conditions are limited to "receipt of full payment or a surrender of the obligation." Id. at 118 citing Heath v. L.E. Schwartz & Sons, Inc., 416 S.E.2d 113, 114–15 (Ga.

App. 1992). Here, Saticoy Bay takes issue with Miles Bauer's payment-in-full language and other alleged "false statements" in the tender letter. For example, Miles Bauer's letter excerpted several sections of NRS § 116 rather than quote the entire subsection of the statute. The letter then states that the association's acceptance of tender would be "an unconditional acceptance on [the association's] part of the facts state [t]herein." Tender Letter, ECF No. 48 Ex. G-3. Saticoy Bay argues that accepting tender would mean it agreed with Miles Bauer's incomplete statements of the law, which it did not. Def.'s Resp. to Mot. Summ. J. 7, ECF No. 50. However, none of the "false statements" that Saticoy Bay disputes were conditions of its acceptance. They were merely excerpted statements of law or fact. The only condition included in Miles Bauer's letter was the paid-in-full condition that cured the bank's financial obligations to the association. Diamond Spur explicitly allowed such a condition. Therefore, Miles Bauer's tender letter was not impermissibly conditional.

In sum, there is no genuine issue of material fact that BNY Mellon's predecessor in interest, Bank of America, tendered the superpriority portion of Mews Homeowners Association's lien before the association foreclosed. The bank's tender was not an assignment of rights and did not subrogate the bank to the rights of the association. Likewise, Miles Bauer was not required to record its tender, keep it good, or pay with guaranteed funds or cashiers check. As a result, Homeowners Association Services' foreclosure was void as to its superpriority lien, and BNY Mellon's deed of trust survived. Saticoy Bay took its interest subject to the bank's deed of trust. Therefore, the Court grants BNY Mellon's motion for summary judgment and denies Saticoy Bay's motion to dismiss.

### B. Mews Homeowners Association's Motion for Summary Judgment

Having granted judgment on BNY Mellon's quiet title and declaratory relief claims against Saticoy Bay, the Court turns to BNY Mellon's claims against the Mews Homeowners Association and the association's own motion for summary judgment. BNY Mellon brought the following claims against Mews: (1) quiet title and declaratory relief; (2) breach of NRS § 116.1113; and (3) wrongful foreclosure. BNY Mellon alleged its breach of NRS § 113.1113 and wrongful foreclosure claims in the alternative. See Pl.'s Resp. to Mot. Summ. J. 2, ECF No.

63.

Mews seeks summary judgment on BNY Mellon's quiet title claim because it is untimely and because the association does not claim any interest in the property. Turning first to the timeliness of BNY Mellon's claim, Mews contends that the claim is time-barred because the accrual began on September 27, 2012, yet BNY Mellon filed its complaint more than four years later on February 14, 2017. According to Mews, the statute of limitations began to run on September 27, 2012 when the bank sent the tender letter. At that point, the association contends, BNY Mellon knew that it could lose its deed of trust by foreclosure.

Mews' date of accrual is incorrect. A cause of action accrues when a party is injured and may seek relief. Petersen v. Bruen, 792 P.2d 18, 20 (Nev. 1990). Nevada has adopted the discovery rule, which extends the start of accrual to when the plaintiff knew of the injury or reasonably should have known of the injury. G & H Assocs. v. Ernest W. Hahn, Inc., 934 P.2d 229, 233 (Nev. 1997). However, Nevada law requires that the plaintiff suffer an actual injury before it may bring suit. When Miles Bauer sent its tender letter, only the possibility of injury existed. The association had not yet foreclosed, and BNY Mellon's deed of trust still encumbered the property. BNY Mellon's quiet title claim began accrual when Saticoy Bay purchased the property and recorded its interest. Only then would BNY Mellon suffer an injury upon which it could bring this suit. That date was December 9, 2014. Foreclosure Deed, ECF No. 48 Ex. I. BNY Mellon brought its claim February 14, 2017, less than three years after the foreclosure. Therefore, the claim is timely.

As for the merits of BNY Mellon's quiet title claim against Mews, that claim fails because there is no dispute between the parties as to who holds superior title. Although a claim for quiet title does not have specific elements, it does require an actual dispute over the parties' interests in the property. See Chapman v. Deutsche Bank Nat'l Tr. Co., 302 P.3d 1103, 1106 (Nev. 2013). Mews does not assert an interest in the Coach Lane property. To the contrary, the only way a quiet title dispute could arise between BNY Mellon and Mews Homeowners Association is if the Court were to set aside the foreclosure sale, which the Court need not do because BNY Mellon's deed of trust survived that sale. Therefore, because Mews denies any

interest in the property, the Court grants its motion for summary judgment on BNY Mellon's quiet title claim.

That leaves BNY Mellon's two remaining claims for wrongful foreclosure and breach of NRS § 116.3116 against Mews. Because those claims were contingent upon the Court finding that Mews' foreclosure extinguished BNY Mellon's deed of trust, they are now moot. Therefore, the Court dismisses BNY Mellon's claims for breach of NRS § 116.3116 and wrongful foreclosure against Mews Homeowners Association.

### IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that plaintiff BNY Mellon's countermotion for partial summary judgment (#48) is **GRANTED**. The Court declares that BNY Mellon's deed of trust in the property located at 1218 Coach Lane in Las Vegas, Nevada survived the Mews Homeowners Association's foreclosure and that Saticoy Bay, LLC took its interest in that property subject to BNY Mellon's deed of trust.

IT IS FURTHER ORDERED that defendant Saticoy Bay, LLC's motion to dismiss (#46) is **DENIED**;

IT IS FURTHER ORDERED that defendant the Mews Homeowners Association's motion for summary judgment (#61) is **GRANTED IN PART** as to BNY Mellon's claim for quiet title and declaratory relief. BNY Mellon's remaining claims for breach of NRS § 116.3116 and wrongful foreclosure are **DISMISSED AS MOOT** because they were contingent upon BNY Mellon's quiet title claim.

The Clerk of the Court shall **ENTER JUDGMENT** in favor of BNY Mellon and against Saticoy Bay, LLC on its quiet title claim. It shall also **ENTER JUDGMENT** in favor of the Mews Homeowners Association and against BNY Mellon on its quiet title claim.

Dated this 9th day of September, 2019.

_____
Kent J. Dawson
United States District Judge